IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ZACHARY DISALVO,
individually and on behalf of all others similarly
situated,

                Plaintiff,

v.

CRM US, INC. d/b/a INSPIRO,

                Defendant.

OPINION and ORDER

19-cv-425-jdp

---

Plaintiff Zachary DiSalvo is a sales representative for defendant CRM US, Inc., which calls itself Inspiro.[1] DiSalvo moves under Federal Rule of Civil Procedure 23 to certify a class of Wisconsin sales representatives who have not received overtime pay as required by state law. Dkt. 48.

The parties have already stipulated to conditional certification of a similar collective of employees under the Fair Labor Standards Act. *See* Dkt. 21. And there is no dispute that DiSalvo meets the requirements for certification of his state-law claims under Rule 23. Instead, Inspiro contends that certifying a class of state-law claims would conflict with the supplemental jurisdiction statute, 28 U.S.C. § 1367, which allows a court to decline to exercise jurisdiction over state-law claims when they would "substantially predominate[]" over the federal claims.

The court will grant DiSalvo's motion for class certification. The class definition needs some minor tweaks, but DiSalvo has otherwise satisfied the requirements of Rule 23. And the

---

[1] The complaint doesn't identify the nature of Inspiro's business, but DiSalvo cites deposition testimony that Inspiro "hires sales representatives to 'answer inbound calls for potential and current DISH customers.'" Dkt. 49, at 3 (citing Rosima Dep. 13:1–8).

court isn't persuaded by Inspiro's argument under § 1367. Although there will likely be significantly more members of the state-law class than the FLSA collective, Inspiro hasn't identified any differences between the state and federal claims, so it is more efficient to decide both in one case.

ANALYSIS

The requirements for class certification under Rule 23 are well established: (1) the scope of the class and the class claims must be "defined clearly" using "objective criteria," *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015); (2) the class must be sufficiently numerous, include common questions of law or fact, and be adequately represented by plaintiffs (and counsel) who have claims typical of the class, Fed. R. Civ. P. 23(a); and (3) the class must meet the requirements of at least one of the types of class actions listed in Rule 23(b). In this case, DiSalvo asks for certification under Rule 23(b)(3), which applies when "the questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

**A. Class definition**

DiSalvo seeks to certify the following class:

> All persons who have been or are currently employed by CRM US, Inc. d/b/a Inspiro, formerly SPi CRM, as sales representatives in Wisconsin who have not been compensated at a rate of one and one-half times their regular rate of pay for hours worked over 40 in a workweek at any time from May 24, 2017 to the present.

Dkt. 49, at 8. Inspiro doesn't object to DiSalvo's class definition, but the court sees three problems with it, one of which the court identified when ruling on the parties' stipulation for

conditional certification of a collective under the FLSA. *See* Dkt. 21. Specifically, the proposed class is defined in terms of success on the merits: the class includes only those who were improperly denied overtime pay, which is the issue to be litigated in this case.

DiSalvo's proposed class claim is that Inspiro did not give sale representatives the overtime pay they were entitled to because Inspiro excluded commissions and bonus payments from the base rate of pay when calculating the overtime rate. So the primary dispute is whether those commissions and payments must be included in the base rate of pay under Wisconsin law. By defining the class as including only those employees who didn't receive "a rate of one and one-half times their regular rate of pay" when working more than 40 hours a week, DiSalvo is assuming that Inspiro is required to consider commissions and bonus payments when calculating the overtime rate.

"Defining the class in terms of success on the merits is a problem because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Mullins*, 795 F.3d at 660 (internal quotations omitted). DiSalvo doesn't explain why he proposed the same class definition that the court already concluded was inconsistent with *Mullins*, so the court will not adopt it.

The second problem is that the class is not limited to sales representatives who earned commissions or bonus payments during one or more weeks that the representatives worked overtime. It may be that most, if not all, of the representatives who worked overtime received either a commission or a bonus, but DiSalvo doesn't cite any evidence one way or the other. Generally, a class should be limited to those who have suffered the same injury, *see Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481, 497 (7th Cir. 2012), so including employees who weren't injured renders the class overbroad.

The third problem is that the proposed class definition extends to the present, but DiSalvo acknowledges in his motion for class certification that Inspiro changed the way it calculates overtime pay on January 25, 2020. *See* Dkt. 49, at 6. Specifically, "Inspiro now uses a formula . . . that accounts for the commission and incentives received by class members." *Id.* (internal quotation marks and alterations omitted). DiSalvo doesn't contend that the new formula is unlawful, and he doesn't explain why overtime calculations made after January 25, 2020, should be included in the class.

When possible, courts should amend defective class definitions rather than deny class certification. *See Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 757 (7th Cir. 2014). In this case, all of the defects in the class definition are easily fixed. So the court will amend the class definition as follows:

> All persons who have been or are currently employed by CRM US, Inc. d/b/a Inspiro, formerly SPi CRM, as sales representatives in Wisconsin who received a commission or bonus payment and worked over 40 hours at any time from May 24, 2017 to January 25, 2020.

This class definition is clear, uses objective criteria, doesn't rely on the merits to define the class, and is limited to sale representatives who suffered the same injury.

## B. Other Rule 23 requirements

The court concludes that the proposed class satisfies all of the Rule 23 requirements, a conclusion that Inspiro doesn't contest.

The parties agree that the proposed class includes at least 700 employees, so it is sufficiently numerous.

Adequacy has two components, one that relates to the named plaintiff and one that relates to class counsel. The named plaintiff must show that his claims are not in conflict with

4

the claims of the proposed class and that he has a sufficient interest in the outcome of the case. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). *See also Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997) ("The adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent."). Rule 23(g)(1) sets forth four factors that a court must consider before appointing class counsel: the quality of counsel's work in the case; counsel's experience in handling similar cases; counsel's knowledge of the law; and the resources that counsel can devote to the case.

DiSalvo has a sufficient interest in the outcome of the case because he worked overtime for Inspiro during the relevant period but his commissions and bonus payments weren't used to calculate his base rate of pay. *See* Dkt. 47 (Rosima Dep. 21:3–22:6). Neither side has identified any conflicts DiSalvo has with other members of the proposed class.

The court also finds that class counsel is adequate. Counsel's law firm, Hawks Quindel, S.C. has significant experience litigating class actions involving wage-and-hour claims, as do each of the individual lawyers working on this case. *See* Dkt. 50. The quality of counsel's work has been adequate, and neither side identifies a reason to believe that counsel have inadequate resources to litigate the case.

There is significant overlap in the requirements for commonality and typicality under Rule 23(a), and the requirement in Rule 23(b)(3) to show that common questions predominate. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982) ("The commonality and typicality requirements of Rule 23(a) tend to merge."); *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 814 (7th Cir. 2012) (Rule 23(b)(3) predominance requirement is "similar to Rule 23(a)'s requirements for typicality and commonality"). All of those requirements focus on the question whether the court or the factfinder can resolve issues across

the class rather than through individualized determinations. *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1059 (7th Cir. 2016) ("Predominance is satisfied when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication.") (internal quotations and alterations omitted); *Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of Chi.*, 797 F.3d 426, 434 (7th Cir. 2015) (to satisfy commonality requirement, "[t]he claims must depend upon a common contention that is capable of class wide resolution"); *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011) (to satisfy typicality requirement, "there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group").

A classwide policy or practice related to a key issue of liability is one of the most common ways for plaintiffs to show that class certification is appropriate, even when there are some differences among the potential claims. *See Dorman v. DHL Exp. (USA), Inc.*, No. 09-cv-99, 2010 WL 446071, at *3 (W.D. Wis. Feb. 3, 2010) ("Typically, when an employee challenges its employer's policy, the validity of that policy predominates over individual issues and class certification is appropriate.") (internal citations omitted).[2] In this case, it is

---

[2] *See also Falcon,* 457 U.S. at 159 n.15 ("Significant proof that an employer operated under a general policy of discrimination conceivably could justify a class of both applicants and employees if the discrimination manifested itself in hiring and promotion practices in the same general fashion."); *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 492 (7th Cir. 2012) (reversing denial of class certification as to issue whether employer's policy had a disparate impact on African-American employees); *Jamie S.*, 668 F.3d at 497–98 ("[A]n illegal policy might provide the 'glue' necessary to litigate otherwise highly individualized claims as a class."); *N.N ex rel. S.S. v. Madison Metro. Sch. Dist., No.* 08-581, 2009 WL 1531028, at *2 (W.D. Wis. June 1, 2009) ("I conclude that common questions predominate over the differences because plaintiff is challenging what seems to be a uniform policy of the district."); *Nerland v. Caribou Coffee Co., Inc.*, 564 F. Supp. 2d 1010, 1022–24 (D. Minn. 2007) (class members were similarly situated because employer "collectively and generally decide[d] that

undisputed that Inspiro had a policy of excluding commissions and bonus payments from the base rate of pay when calculating overtime pay. Because the legality of that policy is central to determining liability, it makes sense to allow plaintiffs to proceed as a class. *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 374–75 (7th Cir. 2015) ("[C]ommonality is satisfied when determination of the truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." (internal quotation marks and alterations omitted)).

The ultimate question in a Rule 23(b)(3) class is whether "judicial economy from consolidation of separate claims outweighs any concern with possible inaccuracies from their being lumped together in a single proceeding for decision by a single judge or jury." *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003). DiSalvo has met that standard. He has identified a policy that was applied the same way to employees over the course of multiple years. Under these circumstances, it makes sense to allow the claims of the proposed class to be resolved in "one fell swoop" rather than in piecemeal fashion. *See Jones v. Cruisin' Chubbys Gentlemen's Club*, No. 17-cv-125-jdp, 2018 WL 1175412, at *3 (W.D. Wis. Mar. 6, 2018) ("A classwide policy or practice related to a key issue of liability is one of the most common ways for plaintiffs to show that class certification is appropriate, even when there are some differences among the potential claims.").

**C. Inspiro's objection**

Although Inspiro doesn't challenge DiSalvo's ability to satisfy any of the Rule 23 requirements, Inspiro contends that 28 U.S.C. § 1367 provides a basis for denying class

---

all [potential class members] are exempt from overtime compensation").

certification of the state-law claims. This objection isn't intuitive, so it requires some unpacking.

Section 1367(a) allows a district court to exercise jurisdiction over state-law claims if they are "part of the same case or controversy" as any federal claims in the case. This means that the state and federal claims must "derive from a common nucleus of operative fact." *Wisconsin v. Ho Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008). Inspiro doesn't contend that the court lacks jurisdiction over DiSalvo's state-law claims, and for good reason. DiSalvo's state and federal claims are based on the same facts: Inspiro's policy of excluding sales representatives' commissions and bonus payments when calculating overtime pay. So the state and federal claims derive from a common nucleus of operative facts.

Inspiro's argument is based on § 1367(c), which gives the court discretion to decline to exercise supplemental jurisdiction under several circumstances. Inspiro cites § 1367(c)(2), which applies when the state-law claim "substantially predominates" over the federal claim. But even Inspiro's reliance on § 1367(c)(2) is qualified. Inspiro doesn't contend that *issues* of state law predominate over federal issues, which is the reason that courts usually apply (c)(2). *See, e.g., Green Valley Investments v. Winnebago Cnty., Wis.*, 794 F.3d 864, 869 (7th Cir. 2015) (district court erred in retaining supplemental jurisdiction when "there [wa]s no overriding federal law question" and state-law questions were complicated and unsettled). In fact, DiSalvo contends that the standard for calculating overtime under state law is the same as federal law on the issues relevant to this case, and Inspiro doesn't challenge that contention. For this reason, Inspiro acknowledges that it would be proper for the court to exercise jurisdiction over the state-law claims of all employees who opted into the FLSA collective. *See* Dkt. 51, at 5. It

contends only that the court should decline to exercise jurisdiction over the sales representatives who aren't in the collective but could be part of the class.

Inspiro's argument is based almost entirely on the potential disparity between the number of employees in the collective—74—and the potential number of employees in the class, which Inspiro estimates to be as many as 875, though it doesn't support that figure with evidence. Inspiro's theory is that the state-law claims will "substantially predominate" over the federal claims simply because there will be many more state-law claims to decide.

At this point, it is unknown how large the disparity between the class and the collective will be. But Inspiro's assumption that the disparity will be significant is reasonable because of an important procedural difference between an FLSA collective and a Rule 23 class. Specifically, employees are required to opt in to FLSA collectives if they wish to participate, but employees must opt out of a Rule 23 class if they wish to be excluded. *See Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010). So even a Rule 23 class that deals with the same issues as an FLSA collective is likely to be much larger because the default option for a class is inclusion rather than exclusion.

In support of its argument under § 1367(c)(2), Inspiro relies primarily on *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301 (3d Cir. 2003), and *Kneipp v. Re-Vi Design, LLC*, No. 17-cv-857-slc, 2019 WL 1244903 (W.D. Wis. Mar. 18, 2019), but these cases are readily distinguishable. In *Kneipp*, no employees opted into the collective, leaving only the named plaintiff to litigate the FLSA claim. And in both cases, the court did not decline to exercise supplemental jurisdiction simply because there was a potential disparity in numbers between the collective and the class. Rather, those cases were similar to *Green Valley* because they involved distinct state-law legal issues that threatened to overwhelm the litigation. *See De*

9

*Asencio*, 342 F.3d at 311 (noting that state-law claims raised "two novel and complex questions"); *Kneipp*, 2019 WL 1244903, at *3 (discussing differences between the federal and state claims).

As even Inspiro acknowledges, the Court of Appeals for the Seventh Circuit has already held that "[a] simple disparity in numbers should not lead a court to the conclusion that a state claim 'substantially predominates' over the FLSA action." *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 980 (7th Cir. 2011). But Inspiro seizes on a qualification of that statement later in the opinion, when the court said that it did not need to "tak[e] a position on whether a state-law class might ever so dwarf a federal FLSA action that supplemental jurisdiction becomes too thin a reed on which to ferry the state claims into federal court." *Id.* Based on that statement, Inspiro says that the court of appeals left the door open to conclude in this case that exercising supplemental jurisdiction is inappropriate. Inspiro cites two reasons: (1) the size of the potential disparity; and (2) the "substantial risk that management and resolution of the Wisconsin action will substantially predominate, particularly with respect to damages." Dkt. 51, at 12–13.

The parties have given different estimates of the exact size of the potential class and we do not know how many employees may choose to opt out. But even if the state-law class is 10–12 times larger than the FLSA collective as Inspiro suggests it will be, the court isn't persuaded that it would be appropriate to decline to exercise jurisdiction over the state-law claims. Applying § 1367(c)(2) isn't simply a numbers game. The court of appeals made it clear in *Ervin* that district courts should be guided by the principle of judicial economy: "In the majority of cases, it would undermine the efficiency rationale of supplemental jurisdiction if two separate

forums were required to adjudicate precisely the same issues because there was a different number of plaintiffs participating in each claim." 632 F.3d at 981.

That is the situation in this case. As already noted, DiSalvo contends that the state and federal claims raise the same legal issues, and Inspiro doesn't dispute that contention. When "the claims are similar between the state plaintiffs and the federal action, it makes no real difference whether the numbers vary." *Id.* at 980. And it would make little sense from a judicial economy perspective to split the case in two, especially because the court will be deciding the state-law claims of the collective anyway. Requiring a separate lawsuit for the other employees would be inefficient, and it would create the possibility of inconsistent judgments.

Perhaps in a situation like *Kneipp*, in which there was no federal collective, it could be said that a state-law class would substantially predominate over the individual claim. But in a case like this one, in which there is a federal collective of a substantial size, the fact that the potential size of the state-law class is significantly larger isn't enough to justify applying § 1367(c)(2).

Inspiro's second contention—that certifying a state-law class will make calculating damages more challenging—is really the same as its first contention. Inspiro doesn't contend that the damages on the state-law claims are different from the federal claims. Inspiro's point is only that calculating damages will be more involved because there will be more state-law claims than federal claims. But Inspiro hasn't identified any reason to believe that calculating damages will be particularly difficult in this case, regardless how many class members there are. Even if the state-law claims will require some additional work, that would not outweigh the greater efficiency of deciding all related claims in one case.

11

The court will not decline to exercise supplemental jurisdiction under § 1367(c)(2). Doing so wouldn't simplify this case. The only purpose it would serve would be to limit Inspiro's potential damages, but that isn't a relevant consideration under Rule 23 or § 1367. So the court will grant DiSalvo's motion for class certification.

### D. Class notice

The last issue is class notice. Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Notice must clearly, concisely, and comprehensibly state: (1) the nature of the action; (2) the class definition; (3) the class claims, issues or defenses; (4) that a class member may enter an appearance through an attorney should he or she desire; (5) that the court will exclude any class member requesting exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on class members, regardless of whether a member may have a stronger individual claim of liability not dependent on proof of an unofficial policy to deny overtime pay. Fed. R. Civ. P. 23(c)(2)(B).

DiSalvo has submitted a proposed class notice, Dkt. 50-5, and it provides all the required information. Inspiro doesn't raise any objections to it. The court will approve the notice with the caveat that DiSalvo must amend the class definition to reflect the changes made in this opinion.

ORDER

IT IS ORDERED that:

1. Plaintiff Zachary DiSalvo's motion for class certification, Dkt. 48, is GRANTED.

2. The following class is certified:

    All persons who have been or are currently employed by CRM US, Inc. d/b/a Inspiro, formerly SPi CRM, as sales representatives in Wisconsin who received a commission or bonus payment and worked over 40 hours at any time from May 24, 2017 to January 25, 2020.

3. The court certifies the following claim for class treatment: Inspiro violated Wisconsin law by failing to include commissions and bonus payments in the base rate of pay when calculating overtime.

4. The court appoints David C. Zoeller, Caitlin Marie Madden, and Vanessa Ann Kuettel of Hawks Quindel, S.C. as class counsel.

5. DiSalvo may have until June 22, 2020, to disseminate the class notice, allowing 45 days for class members to opt out.

Entered June 8, 2020.

                            BY THE COURT:

                            /s/

                            _____

                            JAMES D. PETERSON
                            District Judge